STREET RAILROADS—CONSTRUCTION IN STREET—CONSENT—VALUE OF PROPERTY.
Under Railroad Law, Heydecker's Gen. Laws, p. 3308, c. 39, § 91, pro-
viding that a street surface railroad shall not be built without the con-
sent of one-half in value of the property "bounded on" that portion of
the street on which it is proposed to build the railroad, the value of an
entire tract abutting on the street, with buildings thereon, is to be con-
sidered, though it extends back to another street; it having no interior
boundaries, natural or artificial, and being used as an entirety for a single
purpose.

· Appeal from Special Term, New York County.

Action by Frederick P. Fox and another against the New York City
Interborough Railway Company. From an order (95 N. Y. Supp. 251)
continuing an injunction pendente lite, defendant appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN,
CLARKE, and HOUGHTON, JJ.

George W. Wickersham (Noel Gale, on the brief), for appellant.
William W. Niles and Niles & Johnson, for respondents.

CLARKE, J. This is an appeal from an order continuing, during
the pendency of the action, an injunction restraining the appellant from
constructing its street surface railroad in 200th street, between Jerome
avenue and the Southern Boulevard, in the borough of the Bronx. The
respondents, alleging themselves to be owners of two pieces of property
· situate on the portion of 200th street mentioned, brought this action
for the purpose of permanently restraining the appellant from so con-
structing its railroad upon this street, and of compelling the removal of
such part of the road as had been already built. The action is based
upon the alleged failure of the appellant to obtain the consents of the
owners of one-half in value of the property bounded upon this part
of 200th street, as required by section 91 of the railroad law. The only
question litigated and determined upon the motion was as to the value
to be placed upon a somewhat extensive parcel of land owned by the
Ursuline Convent and occupied by it for the purposes of the Ursuline
Academy. The convent property lies on the south side of 200th street,
and consists of one compact parcel, somewhat oblong in shape, bound-
ed on the north by 200th street, 534 feet; on the west by Bainbridge
avenue, 928 feet; on the south by East 198th street, 528 feet; and on
the east by Marion avenue, 816 feet. The plot is not intersected by any
streets. It has no interior boundaries or divisions, natural or artificial.
It is situated in a suburban neighborhood, and is used as an entirety
for a single purpose—that of the convent school. The academy build-
ing, situated near the centre of the lot, is an integral part of the prop-
erty. This building is situate 325 feet from the north line of 200th
street, and the main entrance for both carriages and foot passengers
opens from that street. The appellant has obtained the consent of the
convent to the construction of its road.

The determination of the proper valuation of this property is es-
sential, both in ascertaining the total valuation of the property bounded

on 200th street, and in computing the value of the property as to which consents have been given.   The Constitution provides, in article 3, § 18, that:

"The Legislature shall not pass a private or local bill in any of the following cases:  *  *  *  Granting to any corporation, association or individual the right to lay down railroad tracks  *  *  *  The Legislature shall pass general laws providing for the cases enumerated in this section  *  *  * But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on  *  *  *  that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained  *  *  *."

In accordance with that mandate of the Constitution, a general law has been passed, known as the "Railroad Law."   Heydecker's Gen. Laws, p. 3308, c. 39.   Section 91 thereof is as follows:

"Consent of property owners and local authorities. . A street surface railroad, or extensions or branches thereof, shall not be built, extended or operated unless the consent in writing, acknowledged or proved as are deeds entitled to be recorded of the owners in cities and villages, of one-half in value, *  *  *  of the property bounded on  *  *  *  that. portion of a street or highway upon which it is proposed to build or operate such railroad, extension or branch shall have been first obtained.  *  *  *  The value of the property above specified shall be ascertained and determined by the assessment roll of the city, village or town in which it is situated, completed last before the local authorities shall have given their consent."

The franchise from the city of New York was perfected on March 31, 1903, so that the assessment which must govern is that of the year 1902.   Upon the basis of that assessment, the toal value of the property bounded on that portion of 200th street upon which it is proposed to build appellant's railroad is $525,000.   The convent property was assessed as one parcel at $175,000.   The appellant had, at the time the action was brought, obtained the consents of the owners of property bounded on said street of the aggregate assessed value of $302,000, and hence, upon those valuations so made, had the consent of the owners of property of more than one-half of the assessed value.   The appellant claimed in the court below that this convent property should be valued at the amount found upon the assessment roll.   The respondents claimed that such portion of the property as was contiguous to 200th street and for a depth of 100 feet only should be taken.   The learned court declined to take either view, but proceeded to make an arbitrary division of the property and valuation of such division of its own, saying:

"In the present case the figures are such that it is not necessary to enter into any niceties of valuation or computation in making an apportionment. An approximation can be made, somewhat arbitrarily and roughly it may be, but one that will err, if at all, in favor of the defendant, and yet give a result in favor of the plaintiffs."

The court then fixed the value of the land it considered entitled to exercise the power of consent at $120,000, and, subtracting the remaining $55,000 from the assessed total valuation and from the total consents, by this process determined that the defendant did not have the necessary consents of the owners of one-half of the property.   Thereupon, as appears upon the appeal from the second order herein, argued at the same time, the appellant proceeded to obtain the consent of an additional property owner, the assessed valuation of whose property

brought the consents above one-half of the amount indicated by the court. Thereupon the court said that it had no intention, "in the decision heretofore made in this case, to hold that $120,000 of the total assessment should be counted as having a voting power in the street in question. On the contrary, I think that $100,000 would be excessive." And it is not impossible that if the appellant, accepting this figure as correct, should proceed to obtain additional consents, another valuation would be indulged in to defeat its attempt to build this road.

The appellant asks this court to lay down a rule in accordance with which the rights of the railroad and the rights of the property holders can be clearly ascertained. The mere statement of the facts in the case at bar shows how desirable it is that there should be such a rule. The situation is further illustrated by the facts set forth in Ebling Brewing Company against New York City Interborough Railway Company, argued upon the same day as the case at bar. In that case the positions of the property holders and the railroad company were reversed; the property holders endeavoring to induce the court to consider a large parcel of land with the buildings thereon, used for one purpose and held in one ownership, as an entirety, to defeat the construction of the road, and the railroad endeavoring to have the court arbitrarily divide the property in order to enable it to show the necessary consents. There should be no such uncertainty in the law, if it be possible to avoid it. There should be one rule to be applied in all cases to each party. Sometimes its application will make for the supposed advantage of one, and sometimes of the other. Such a question should not be left in nubibus, depending for its decision on the length of the chancellor's foot, or throwing a question of fact difficult of correct determination into every case. This question has not been decided in any case which has been called to our attention or which our own researches have discovered; but we find in the Constitution and the statute satisfactory ground for the proper rule.

The Constitution says (article 3, § 18):

"The consent of the owners of one half in value of the property bounded on * * * that portion of a street or highway upon which it is proposed to construct * * * such railroad."

The statute (section 91 of the railroad law) says:

"The consent * * * of the owners * * * of one half in value * * * of the property bounded on * * * that portion of the street or highway upon which it is proposed to build * * * such railroad. * * * The value of the property above specified shall be ascertained and determined by the assessment roll of the city * * * completed last before the local authorities shall have given their assent."

It is evident that it was the intention of the Legislature to remove this question of valuation from the realm of uncertainty into that of certainty. It fixed the assessment made prior to the consent of the local authorities—an assessment made by public officers for other purposes, to wit, taxation—as the fairest and surest standard. The consent was of the owner of property bounded on the street, with no limitation as to size, location, or use. The provisions apply to cities, towns, and villages, to city streets and country highways, to 25 by 100 city lots, and to suburban estates and country farms, if they are held

in one ownership and are bounded by the street or highway. We believe it to have been the intention of the Legislature, and we announce it as the rule of law, that in considering the question of the valuation of property for the purpose of determining whether the necessary consents have been obtained, the value of each entire parcel of land, with the buildings thereon, as appearing upon the assessment roll for the appropriate year, is final and conclusive.

It follows that the order appealed from should be reversed, with $10 costs and disbursements. and the motion denied, with $10 costs. All concur.

(112 App. Div. 910)

### FOX et al. v. NEW YORK CITY INTERBOROUGH RY. CO.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

Appeal from Special Term, New York County.

Action by Frederick P. Fox and another against the New York City Interborough Railway Company. From an order denying motion for reargument, defendant appeals. Affirmed.

See 95 N. Y. Supp. 251.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

George W. Wickersham; for appellant
William W. Niles, for respondents.